UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| GATEWAY ETHANOL, L.L.C. | ) | Case No. 08-22579-DLS |
| | ) | |
| Debtor. | ) | |

### EMERGENCY MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARIES, REIMBURSABLE EMPLOYEE EXPENSES AND MEDICAL AND OTHER EMPLOYEE BENEFITS

**COMES NOW** Gateway Ethanol, L.L.C., as Debtor and Debtor in Possession ("Debtor"), and submits its Emergency Motion for Order Authorizing Payment of Pre-Petition Wages, Salaries, Reimbursable Employee Expenses and Medical and Other Employee Benefits (the "Motion"). In support of this Motion, Debtor relies on the Affidavit of Frederick S. Loomis in Support of First Day Applications and Motions (the "Loomis Affidavit"). In further support of this Motion, Debtor respectfully represents as follows:

#### BACKGROUND

1. On even date with the filing of this Motion (the "Petition Date"), Debtor filed a voluntary petition in this Court for reorganization relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code"). Debtor continues to operate its business and manage its properties as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed, and no official committee of creditors or equity interest holders has yet been established.

3. With its voluntary petition, Debtor contemporaneously filed this Motion and an <u>Emergency Motion for Expedited Hearings on Certain Motions and Applications</u> (the "Hearing Motion"). This Motion is included within the Hearing Motion.

## BACKGROUND OF THE DEBTOR

4. The background of this case may be found in the Loomis Affidavit.

## THE EMPLOYEES

5. In the past Debtor's facility included a much larger staff, but Debtor currently employs eleven (11) salaried and hourly employees, which include management, office staff, and production staff. Ten of the employees are full-time, and three of the employees will be furloughed after Cargill finishes removing its grain from Debtor's elevator. One employee is part-time. All of these employees are on the payroll of, and paid by, Debtor. Debtor's employees are comprised of the following categories:

(i) Exempt [1]: 5

(ii) Non-exempt [2]: 6

(iii) Total Employees: 11

6. The majority of employees are paid on an hourly basis. The employees are all non-union. A smaller percentage of employees (<u>i.e.</u>, management, professionals, or supervisors), are paid on a salaried basis. All employees will suffer great hardship if they were to lose or suffer any delay in receiving their pay and/or benefits.

---

[1] "Exempt" refers to employees who are exempt from wage and hour laws (i.e., professional and managerial employees).

[2] "Non-exempt" refers to employees' status as not being exempt from wage and hour laws (i.e., production workers, clerical employees, and administrative staff).

7. The continued, uninterrupted service of Debtor's existing skilled and dedicated employees is vital to Debtor's reorganization efforts. The employee compensation, reimbursement and benefits described in this Motion are reasonable compared to cash and non-cash payments and benefits provided by other employers and are absolutely necessary to maintain Debtor's work force.

8. Debtor's ability to effectively reorganize its business and/or maximize the value of its assets will be adversely affected if it is unable to retain the services of its employees. Accordingly, it is essential that undue hardships that employees may suffer as a consequence of this Chapter 11 filing be minimized and that morale be maintained.

9. As described more fully herein, employees have claims against the Debtor consisting of wages, salaries, PTO pay (including vacations, holidays and sick leave), life insurance, 401(k) contributions, reimbursable business expenses, workers' compensation, medical benefits, dental benefits and other benefits (collectively referred to as the "Pre-Petition Employee Claims").

10. By this Motion Debtor seeks emergency relief. Any delay in making scheduled payments and/or providing the employee benefits described herein undermines relationships with Debtor's employees, irreparably impairs employee morale and risks interruption of services at the precise time when employee dedication, confidence and cooperation are critical.

11. The initiation of these bankruptcy proceedings creates a precarious situation for Debtor. The loss of employees could have a significant adverse impact upon Debtor's ability to reorganize and upon the value of its assets.

12. To the extent that payment of the amounts described in this Motion may subsequently be determined to be greater than a recipient thereof would otherwise have received if these cases were commenced or proceeded under Chapter 7 of the Bankruptcy Code, Debtor (or any subsequently appointed Trustee) expressly reserves the right to seek recovery of such payments.

13. Approval of the Motion and the payment of the compensation, reimbursements and benefits described herein are essential to Debtor's reorganization and are in the best interests of all parties in interest.

14. Notwithstanding anything contained herein to the contrary, this Motion shall not constitute the assumption of any executory contract of any type, kind or nature, under §§ 365 of the Bankruptcy Code or otherwise, and is filed without prejudice to Debtor's rights to assume, assume and assign, reject, terminate, or modify any of its executory contracts, all of which rights are expressly reserved.

15. In order to effectuate the relief sought in this Motion relating to the payment of the employee obligations discussed herein, Debtor also seeks an order authorizing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on Debtor's employee-related accounts, whether presented prior to or after the Petition Date in accordance with Debtor's stated policies with regard thereto, and with any charges (including charges for returned or dishonored checks) for the same payable by Debtor, provided sufficient funds exist in the employee-related accounts to cover such payments.

16. Additionally, the rationale for entering such an order relating to the payment of employee obligations is also set forth in Debtor's <u>Emergency Motion for Order Authorizing Maintenance of Cash Management System and Continued Use of Certain Existing</u>

Bank Accounts, Investment and Deposit Practices and Certain Business Forms filed concurrently with this Motion.

### PRE-PETITION WAGES

17. On September 26, 2008, Debtor distributed payroll checks to its employees in the ordinary course of business. The total amount of these payments, including federal, state and local tax obligations related thereto, was approximately $47,000.

18. Debtor remains obligated to pay its employees for work completed before the Petition Date (the "Pre-Petition Payroll"). By this Motion Debtor requests authority to pay such Pre-Petition Payroll in the ordinary course of its business. The estimated amount of the Pre-Petition Payroll, including federal, state and local tax obligations, for all employees is approximately $23,650.00. The next regular payroll disbursement for Debtor's employees in the approximate amount of $23,650.00 is scheduled to be made October 10, 2008, covering the period of September 22, 2008 through October 5, 2008, and will include the full estimated pre-petition amount of $23,650.00. The subsequent payroll, in the approximate amount of $21,500.00 will be paid on October 24, 2008, covering the period of October 6, 2008 through October 19, 2008. To the extent necessary, Debtor requests authority to pay the Pre-Petition Payroll in the ordinary course of its business.

19. Debtor is not seeking authority to pay the pre-petition claim of Jeff Spencer, Debtor's former Chief Financial Officer, who was contract labor.

### REIMBURSABLE EXPENSES

20. Prior to commencement of this Chapter 11 proceeding, certain employees incurred a variety of business expenses on behalf of Debtor which, consistent with ordinary practice, are reimbursable. It is both inequitable and serves as an undue hardship if employees

KC01DOCS904610.2

5

Case 08-22579    Doc# 9    Filed 10/05/08    Page 5 of 13

are required to bear those expenses, all of which were incurred on behalf of Debtor with the expectation that employees would be promptly reimbursed by Debtor. While the Plant remains inoperable Debtor expects the average monthly reimbursements to be approximately $1,425.00, To the extent necessary, Debtor requests authority to pay any Pre-Petition Reimbursable Expenses in the ordinary course of its business..

### PRE-PETITION INSURANCE PLANS

21. Debtor has established various employee benefits plans and policies which provide employees with benefits such as medical insurance, dental insurance, vision insurance, and life insurance (collectively, the "Insurance Benefits"). The primary program providing Insurance Benefits for health insurance is with Coventry Health Care of Kansas (the "Health Plan"). As of the Petition Date, 11 eligible employees and their dependents are enrolled in the Health Plan. Eligible employees are offered four levels of coverage options. Debtor's premium obligation depends on the coverage each employee selects. The employees' portion of the premium is paid through payroll deductions. Debtor's total cost for the August premium for the Health Plan was paid in the amount of $25,000. Debtor's total cost for the September premium for the Health Plan was paid in the amount of $15,381. The October monthly net expense for Debtor under the Health Plan is estimated to be $6,700, and remains unpaid.

22. Debtor also offers dental insurance provided through Delta Dental (the "Dental Plan"). As of the Petition Date, 11 eligible employees and their dependents are enrolled in the Dental Plan. The premiums for the Dental Plan are fully paid by each participating employee through payroll deductions. As of August 31, 2008, the August premium was paid in the amount of $1,700. The September premium has been paid in the

amount of $1,585.27. The October monthly net expense for Debtor under the Dental Plan is estimated to be $635, and remains unpaid.

23. Debtor offers its employees vision insurance through Vision Care Direct ("Vision Plan"). As of the Petition Date, 11 employees and their dependents are enrolled in the Vision Plan. The premiums for the Vision Plan are fully paid by each participating employee through payroll deductions. As of August 31, 2008, the August premium was paid in the amount of $287. The September premium remains unpaid in the amount of $294.06. The October monthly net expense for Debtor under the Vision Plan is estimated to be $140, and remains unpaid.

24. Debtor offers its employee supplemental insurance coverage for cancer, disability and accidental death through Assurant Employee Benefits ("Supplemental Plan"). As of the Petition Date, only one employee and his/her dependents remain enrolled in the Supplemental Plan. The premiums for the Supplemental Plan are fully paid by the participating employee through payroll deductions. As of August 31, 2008, the August premium was paid in the amount of $116. The September premium was paid in the amount of $116. The October monthly net expense for Debtor under the Supplemental Plan is estimated to be $18, and remains unpaid.

25. Debtor maintains a life insurance plan for its employees through Assurant Employee Benefits. Coverage is equal to $20,000 per eligible employee. Debtor pays 100% of this benefit. The August, 2008 premium in the amount of $168 has been paid. The September premium was paid in the amount of $168. The October monthly next expense for Debtor under the Life Insurance Plan is estimated to be $60, and remains unpaid.

26. Debtor believes that a portion of its obligations for the medical plan coverage is entitled to priority treatment pursuant to 11 U.S.C. § 507(a)(5); however, the precise amount of that priority is difficult to estimate at this time.

27. Debtor must be permitted to honor these pre-petition obligations with respect to the Insurance Benefits to maintain the morale of employees and to preserve the Debtor's ability to reorganize. The failure to maintain Insurance Benefits in force and effect places Debtor at risk that employee morale will decline rapidly, which will adversely affect Debtor's reorganization efforts.

## WORKERS' COMPENSATION BENEFITS

28. Workers' compensation claim coverage is required under law, is necessary to maintain the status quo, provides benefits to employees injured in the ordinary course of Debtor's business, and prevents undue hardship for disabled employees who depend upon such benefits to satisfy personal needs and obligations.

29. In compliance with statutory requirements, Debtor maintains workers compensation insurance coverage through The Plexus Groupe, Inc. The policy has a premium and no deductible per medical claim occurrence. Debtor paid 100% of the 2008 annual premium in the approximate amount of $86,000, which is paid through October 8, 2008. The policy is to be renewed by October 8, 2008.

## PENSION AND 401(K) CONTRIBUTIONS

30. Like many companies, Debtor maintains a 401(k) savings plan for its employees. Debtor does not contribute or match contributions of the employees. This plan, sponsored by Debtor is the Gateway Ethanol, LLC Plan, and is administered and controlled by Great West Retirement Services. Debtor funded the amounts directed from the payroll cycle

ending September 26, 2008, in the approximate amount of $770. As of the Petition Date, Debtor has not funded the amounts directed from the payroll cycle which will end on October 10, 2008. For the payroll cycle ending on October 10, 2008, approximately $350 will be withheld. Debtor also pays nominal costs to administer the Plan.

## PAYROLL DEDUCTIONS

31. As a convenience and accommodation for employees, Debtor makes deductions from employees' payroll checks and subsequently pays those funds, along with any required employee refunds, to various third parties. These payroll deductions are for such items as health, dental, vision or supplemental insurance premiums, and 401(k) plan contributions. These funds are not property of the estate under 11 U.S.C. § 541, and accordingly, Debtor requests authority to pay over all such funds to the designated payees.

## PAID TIME OFF PLAN

32. Debtor maintains a policy whereby employees accrue entitlements to paid personal time off (PTO) and paid holidays. Employees may carry a maximum of 40 hours of PTO into a new calendar year. Debtor does not pay employees for PTO days not used. However, upon termination of employment, Debtor pays employees for unused, accrued PTO time. As of the Petition Date, Debtor believes that the cost attributable to accrued PTO pay is approximately $14,000. As with Debtor's other employee programs, failure to honor existing company policies will result in low employee morale, ill-will, and decreased productivity and effectiveness, which adversely affects Debtor's ability to reorganize. Like employee wages, such amounts are entitled to priority treatment under 11 U.S.C. § 507(a)(4). Although the exact amount of such pay and entitlements cannot be determined with precision at this time, Debtor

requests authority to maintain its PTO and holiday leave policies in the ordinary course of its operations.

33. Debtor requests that it be authorized but not required to pay the Pre-Petition Employee Claims described above. Without such relief, Debtor's employees will be irreparably harmed resulting in ill-will towards Debtor and less effective employee performance. The vast majority of employees will receive less than the $10,950 amount allowed by 11 U.S.C. § 507. To the extent that payment of the amounts described in this Motion may subsequently be determined to be greater than a beneficiary would otherwise have received if these cases were commenced or proceeded under Chapter 7 of the Bankruptcy Code, Debtor (or any subsequently appointed Trustee) expressly reserves the right to seek recovery of such payments.

### K. APPLICABLE LAW

34. Authority to pay pre-petition employee benefits is essential to the Debtor's ability to reorganize, and is in the best interests of Debtor's estate and all creditors. Bankruptcy courts have recognized the need to satisfy pre-petition obligations relating to employees to maintain and protect a Debtor's business and preserve employee morale. See e.g., In re Farmland Industries, Inc., Case No. 02-50557 (Bankr. W.D. Mo., June 5, 2002); In re Food Barn Stores, Inc., Case No. 93-40012 (Bankr. W.D. Mo., Jan. 7, 1993); In re Federated Dept. Stores, Inc., 1990 Bankr. LEXIS 72 (Bankr. S.D. Ohio Jan. 15, 1990) (available on LEXIS, Genfed library, FDS file) (authorizing and directing Debtor to pay employees, in accordance with standard policies all pre-petition wages, salaries, commissions for retail sales, sick pay, holiday pay, etc.); In re Apex Oil Co., et. al., Order dated February 1, 1988, Chapter 11 Case No. 87-43804-BKC-BSS (Bankr. E.D. Mo.) (authorizing Debtor to pay pre-petition

wages, vacation pay, income withholding, medical deductions, maintenance, union dues, bonuses, and overtime compensation); <u>In re Continental Airlines Corp., et. al.</u>, Order dated September 29, 1983, Chapter 11 Case No. 83-04019-H2-5 (Bankr. S.D. Tex.) (authorizing the Debtor to pay active employees pre-petition claims for salary, insurance benefits, and out-of-pocket expenses and to pay $500,000 toward certain insurance claims of employees); and <u>In re KDT Industries</u>, Order dated September 16, 1982, Chapter 11 Case Nos. 82B11453 through 82B11515 and 82B11687 through 82B11718 (Bankr. S.D.N.Y.) (authorizing Debtor to reimburse employees for pre-petition travel expenses). These authorities and others recognize that it is critical to permit a debtor pay pre-petition claims of employees to preserve and protect the debtor's business and ability to reorganize by minimizing disruption to the workforce and maintaining positive employee morale.

35. This Court, pursuant to the "Necessity of Payment" doctrine, may authorize the payment of pre-petition claims if (i) necessary to the continued operation of a debtor; (ii) in the best interest of a debtor's creditors and employees; and (iii) necessary for a debtor's successful reorganization. <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); <u>In re Chateaugay Corp.</u>, 80 B.R. 279, 281 (S.D.N.Y. 1987).

36. Moreover, Debtor is authorized to continue to retain its assets and operate its business pursuant to Bankruptcy Code §§ 1107(a) and 1108. Section 363(c)(1) of the Bankruptcy Code authorizes Debtor to enter into transactions in the ordinary course of business without notice or a hearing. Thus, with respect to Debtor's authority to continue to provide employee benefits post-petition, no court order is required. However, to minimize disruption and preserve values, Debtor must also honor employee compensation, reimbursements, and

benefits that were earned or accrued pre-petition or which are based, in whole or in part, upon pre-petition services.

### L. OVERALL RATIONALE

37. The relief sought in this Motion will facilitate the stabilization of a productive workforce and the success of Debtor's reorganization efforts.

38. Absent the emergency relief requested in this Motion being granted:

(a) Debtor's employees will suffer undue hardships and, in many instances, financial difficulties because such amounts are necessary to enable employees to meet their respective personal, household and family obligations; and

(b) the stability of Debtor's workforce will be undermined by persistent threats that otherwise loyal employees will seek other employment alternatives, coupled with increased inefficiencies and loss of morale.

### CONCLUSION

**WHEREFORE,** Debtor respectfully requests that this Court enter an order, excluding the pre-petition claim of Jeff Spencer, (i) authorizing but not requiring Debtor, at Debtor's discretion, to pay all Pre-Petition Employee Claims and other benefits as set forth herein; (ii) authorizing all applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn on Debtor's employee-related accounts, whether presented prior to or after the Petition Date in accordance with Debtor's stated policies with regard thereto, provided sufficient funds exist in the employee-related accounts to cover such payments; and (iii) granting such other and further relief as is just and proper.

Respectfully submitted,

BRYAN CAVE LLP


By:   /s/ Laurence M. Frazen
     Laurence M. Frazen     KS Fed. #70114
     Tammee E. McVey      KS #14972
     3500 One Kansas City Place
     1200 Main Street
     Kansas City, Missouri 64105
     Telephone: (816) 374-3200
     Facsimile: (816) 374-3300

Attorneys for Debtor and Debtor in Possession